UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE COFFEE BEANERY LTD,
JOANNE SHAW, JULIUS SHAW, KEVIN
SHAW, KURT SHAW, KEN COXEN, WALTER
PILON, and OWEN STEARN,

        Petitioners,

v.

WW L.L.C, DEBORAH WILLIAMS, and
RICHARD WELSHANS,

        Respondents.

_____/

Case No. 06-10408
Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 23, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

Petitioners initiated this action to compel arbitration to resolve a dispute between

themselves and respondents arising from a franchise agreement pursuant to which

respondents purchased and operated a Coffee Beanery Cafe.  Respondents thereafter

sought to stay arbitration pending the outcome of administrative proceedings the

Maryland Securities Commissioner brought against The Coffee Beanery Ltd. and Kevin

Shaw.  This Court denied respondents' request and the parties proceeded to arbitration in

January 2007.  On March 28, 2007, the arbitrator issued an arbitration award in favor of

petitioners and against respondents. Presently before the Court is respondents' motion to vacate the arbitration award and petitioners' motion to confirm the award, filed April 18 and 20, 2007, respectively. This Court issued a notice to the parties on May 15, 2007, informing them that it is dispensing with oral argument with respect to both motions pursuant to Eastern District of Michigan Local Rule 7.1(e)(2).

## I.    Factual and Procedural Background

The Coffee Beanery Ltd. ("Coffee Beanery") is a Michigan Corporation with its principal place of business in Flushing, Michigan. The remaining petitioners are officers of the Coffee Beanery and citizens of Michigan. The Coffee Beanery sells and operates Coffee Beanery franchises.

Respondent WW L.L.C. ("WW") is a Maryland corporation with its principal place of business in Annapolis, Maryland. Respondents Deborah Williams and Richard Welshans own WW and are Maryland citizens. In June 2003, Welshans received a "Uniform Franchise Offering Circular" ("UFOC") from the Coffee Beanery and a copy of the Coffee Beanery's Franchise Agreement ("franchise agreement"). On June 17, 2003, Welshans and Williams visited the Coffee Beanery's corporate headquarters in Flushing, Michigan. Respondents contend that, during this visit, Kevin Shaw made false representations and/or failed to disclose material information concerning the earnings potential of Coffee Beanery Café franchises. On that date, Welshans executed a franchise agreement, pursuant to which he agreed to purchase and operate a Coffee Beanery Café franchise. On August 21, 2003, Welshans assigned the franchise agreement to WW.

The franchise agreement contains a dispute resolution clause that requires the parties to engage in non-binding mediation in Flushing, Michigan, to resolve "any claim or controversy arising out of or related to [the franchise agreement], or the making, performance, breach, interpretation, or termination thereof."  (Am. Petition, Ex. 2 § 23.2.) The franchise agreement further provides that no arbitration or litigation may be commenced on any claim subject to mediation prior to the "mediation termination date"– which the franchise agreement defines as within sixty days of the issuance of a request for mediation or such longer period as may be agreed upon by the parties in writing.  (*Id*. §§ 23.3 & 23.3.3.)  The franchise agreement also requires the parties to engage in arbitration to resolve "any claim or controversy arising out of or related to this Agreement, or the making, performance, breach, interpretation, or termination

thereof . . ." (*Id*. § 23.4.)

On January 21, 2005, WW, through its attorney, sent the American Arbitration Association ("AAA") and the Coffee Beanery a "Demand for Mediation and Arbitration." (Am. Petition, Ex. 7.)  The Demand stated the nature of the dispute to be mediated and arbitrated as follows:

> Declaratory Judgment, Fraud, Negligent Misrepresentation,
> Fraudulent Misrepresentation, Fraudulent Nondisclosure,
> Negligent Nondisclosure, Breach of Contract, Breach of
> Covenant of Good Faith and Fair Dealing, violations of the
> Maryland Franchise Registration and Disclosure Law . . .
> Michigan's Consumer Protection Act . . .

(*Id*.)  On January 31, 2005, AAA sent correspondence to the Coffee Beanery and WW

offering mediation and noting that the franchise agreement stipulates to the location of mediation as Flushing, Michigan. Although mediation subsequently was scheduled, no mediation ever occurred. As indicated previously, the matter instead proceeded to arbitration in January 2007.

In the meantime, on January 19, 2006, the Maryland Securities Commissioner ("Commissioner") brought an administrative action against the Coffee Beanery and Kevin Shaw by way of an order to show cause. The Commissioner issued an amended order to show cause on February 3, 2006. According to the Commissioner's show cause orders, the Securities Division of the Office of the Attorney General of Maryland initiated an investigation into the franchise-related activities of the Coffee Beanery and Kevin Shaw with respect to respondents, and found grounds to allege violations of the disclosure and antifraud provisions of Maryland Franchise Law. The orders further require the Coffee Beanery and Kevin Shaw to show cause why they should not be ordered to permanently cease and desist from the offer and sale of franchises in violation of the Maryland Franchise Law. The orders require the Coffee Beanery and Kevin Shaw to file a written answer within fifteen days, responding to the allegations in the orders and indicating whether they request a hearing.

On September 12, 2006, the Coffee Beanery and Kevin Shaw entered into a Consent Order with the Commissioner. (Resp.' Mot. Vacate, Ex. 1.) In the "Statement of Facts" section, the Consent Order details *inter alia* supposed deficiencies in the UFOC Welshans received from the Coffee Beanery in June 2003. Specifically, the Consent

Order provides that the UFOC failed to disclose when the Coffee Beanery began selling franchises for Café Stores and provided figures for Coffee Beanery franchises (e.g., number of outlets opened, in operation, and closed and contact information for current and terminated franchises) without differentiating between Café and non-Café franchises. The Consent Order contains the following conclusions of law:

> 30. Respondent Coffee Beanery violated section 14-229 of the Maryland Franchise Law by making material misrepresentations of fact or omissions of material fact about the Coffee Beanery franchise offering to prospective Maryland franchisees.
>
> 31. Respondent Coffee Beanery violated section 14-223 of the Maryland Franchise Law by offering and selling franchises in Maryland without giving franchisees a copy of the form of offering prospectus required under the Maryland Franchise Law.

(*Id*.) However the Consent Order further provides that, by entering the Consent Order, the Coffee Beanery and Kevin Shaw do not admit or deny the statement of facts or conclusions of law contained therein. (*Id*.) The Consent Order also states that the Coffee Beanery and Kevin Shaw "may deny any statement of fact or conclusion of law of the Consent Order in any proceeding, litigation, or arbitration against them in which the Commissioner is not a party; . . ." (*Id*.)

As relevant to the pending motions, the Consent Order imposes the following sanctions on the Coffee Beanery and Kevin Shaw:

> A. Respondents will permanently cease and desist from offering and selling franchises in Maryland or to any prospective Maryland franchisees in violation of the

Maryland Franchise Law.

B.      Coffee Beanery agrees to make a rescission offer to the Welshans [sic], by and through WW, LLC, and any other Maryland residents who purchased a Coffee Beanery Café Store franchise after January 1, 2003, by sending those franchisees: (i) a copy of this Consent Order; and (ii) a letter, in substantially the form attached to this letter as Exhibit 1, notifying those franchisees that they have the right to rescind their Coffee Beanery franchise agreements.

(*Id.*)  The letter attached as Exhibit 1 to the Consent Order, which is entitled "Notice of Offer to Rescind Franchise Agreement," grants a franchisee thirty (30) days from the date of the franchisee's receipt of the letter to rescind its franchise agreement with the Coffee Beanery.  (*Id.*)  It appears that, although seeking rescission in the arbitration proceedings, respondents never accepted the offer to rescind required by the Consent Order.[1]

## II.    Applicable Standard of Review

The Federal Arbitration Act provides that, where the parties have agreed that a judgment of the court shall be entered upon an arbitration award, any party, within one year after such an award, "may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated,

---

[1]In her award, the arbitrator concluded that respondents "are barred from electing rescission under the Consent Order because they did not accept the rescission offer within the stated 30-day period."  (Pet.'s Mot. to Confirm, Ex. A.)  Although disputing several findings of the arbitrator, respondents do not contest the accuracy of this finding.

modified, or corrected as prescribed in [9 U.S.C. §§ 10 & 11]."[2]  9 U.S.C. § 9 (emphasis

added).

9 U.S.C. § 10 provides the following grounds for a federal court to vacate an

arbitration award:

> (1)     where the award was procured by corruption, fraud, or
>          undue means;
> (2)     where there was evident partiality or corruption in the
>          arbitrators, or either of them.
> (3)     where the arbitrators were guilty of misconduct in
>          refusing to postpone the hearing upon sufficient cause
>          shown, or in refusing to hear evidence pertinent and
>          material to the controversy; or of any misbehavior by
>          which the rights of the party have been prejudiced; or
> (4)     where the arbitrators exceeded their powers, or so
>          imperfectly executed them that a mutual, final, and
>          definite award upon the subject matter was not made.

9 U.S.C. § 10(a) (2002).  A federal court's power to vacate an arbitration award "is

almost exclusively confined to the four grounds specified in the Federal Arbitration Act, 9

U.S.C. § 10."  *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076, 1079 (6th Cir. 1995)(citations

omitted).  However, a court also may vacate an award if the conduct of the arbitrator(s)

constitutes "manifest disregard" of the applicable law.  *Id*. (citations and quotation marks

omitted).

Nevertheless, a court's review of an arbitration award "is generally extremely

narrow."  *Id*.  The Supreme Court has long held that "the courts play only a limited role

---

[2]In their motion to vacate the arbitration award, respondents rely on Section 10 of
the Act, only.

when asked to review the decision of an arbitrator.  The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 370 (1987).  As the Supreme Court has stated differently, even "the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728 (2001)(quoting *Misco*, 484 U.S. at 39, 108 S. Ct. 364).  Extending this standard of review beyond the labor relations context, the Sixth Circuit Court of Appeals has stated: "Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (2005)(emphasis removed).  "And 'if a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.'" *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995)).

## III.  Analysis

The parties' franchise agreement provides that any arbitration award "shall be binding" on the parties and "may be entered and enforced in any court of competent jurisdiction."  (Am. Pet., Ex. 2 ¶ 23.4.)  Thus, this Court must confirm the arbitrator's award, unless the Court concludes that the award should be vacated pursuant to Section 10 of the Act.

In their motion to vacate the arbitration award and in their response to petitioners' motion to confirm the award, respondents assert numerous arguments as to why they believe the arbitration award must be vacated. While both pleadings do not set forth all of the same arguments, in response to petitioners' motion to confirm the arbitration award, respondents categorize their arguments as follows:[3] (i) issues in the creation of the arbitration agreement; (ii) problems with the [arbitration] process as implemented by the [Coffee Beanery] and the AAA; (iii) perjury of the Coffee Beanery at the arbitration; and, (iv) the arbitrator showed a manifest disregard of the law. Under this latter heading, and throughout their motion to vacate the arbitration award, respondents argue that the arbitrator disregarded the law and ignored the facts that favored their version of the relevant events. Thus the Court will address these different alleged grounds for vacating the award separately.

## A.    Issues in the Creation of the Arbitration Agreement

Respondents contend that they were "led to believe . . . that they would be able to litigate their Maryland Franchise Registration and Disclosure Law claims, and consequently, all other pendent claims, in Maryland courts." (Resp.'s Br. in Supp. of Mot. to Vacate at 7.) Respondents further argue that "[n]owhere was it disclosed to them that they would have to arbitrate their Maryland statutory claims in Michigan at great

---

[3]In their motion to vacate the arbitration award, respondents do not categorize their arguments in support of the motion according to the above-identified categories. Nevertheless, their arguments fall under these headings.

expense and . . . that the AAA is biased or that the costs of a AAA arbitration . . . are exceedingly high and unduly burdensome." (*Id*.) Respondents then proceed to set forth fourteen aspects of AAA's arbitration process they believe "mandate that the arbitration be vacated." (*Id*. at 10.)

As an initial matter, respondents' arguments are relevant to a determination of whether the arbitration provision in the franchise agreement is enforceable. Respondents failed to raise these arguments earlier in this litigation when petitioners moved to compel arbitration. In any event, this Court finds that the language of the franchise agreement clearly disclosed to respondents not only that their claims were subject to arbitration, but that the AAA would conduct any arbitration and would do so according to its rules and procedures. *See, supra*.

To the extent there is any merit to respondents' claim that the AAA is biased to corporations, such a broad indictment of the association fails to demonstrate "evident partiality" under Section 10 of the Federal Arbitration Act. Interpreting this ground, courts have explained: "The alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting it . . . must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998)(quoting *Consolidation Coal Co. v. Local 1643, United Mine Workers of Am.*, 48 F.3d 125, 129 (4th Cir. 1995)). ". . . [T]he party seeking invalidation must demonstrate more than amorphous institutional predisposition toward the other side; a lesser showing would be tantamount to an 'appearance of bias'

standard." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 645 (6th Cir. 2005)(citing *Andersons*, 166 F.3d at 329).

### B. Problems with the Arbitration Process

Respondents argue that the franchise agreement required the parties to mediate any disputes within 60 days of a demand for mediation, but mediation did not occur within that time period and, in fact, did not occur at all. Respondents contend that misconduct by petitioners and AAA precluded mediation and compelled arbitration, contrary to respondents' mediation demand. Respondents further argue that the arbitration process was flawed as a result of Joanne Barron's appointment as the arbitrator, as Barron and the Coffee Beanery use the same accounting firm.

For the same reasons discussed above regarding respondents' claim that the AAA is an impartial body, the mere fact that Ms. Barron and the Coffee Beanery are associated with the same accounting firm does not establish a ground under Section 10 for vacating Ms. Barron's arbitration award. To the extent respondents argue that Ms. Barron ignored facts or law due to her impartiality, the Court will address those arguments below.

Contrary to respondents' interpretation of the franchise agreement, the parties do not have to engage in mediation before arbitration may proceed. Rather, Section 23.3 of the franchise agreement states that "[n]o arbitration or litigation may be commenced on any claim which is subject to mediation . . . *prior to the mediation termination date*, as defined in Section 23.3.3, *whether or not the mediation has been commenced*. (Am. Pet., Ex. 2 ¶ 23.3.) Section 23.3.3 provides that "[n]on-binding mediation . . . shall be

11

concluded within sixty (60) days of the issuance of the request [for mediation], or such longer period as may be agreed upon by the parties in writing ("mediation termination date")." (*Id.* ¶ 23.3.3.)  In this case, respondents filed a demand for mediation, along with a demand for arbitration, on January 21, 2005.  There is no evidence that the parties agreed in writing to a longer mediation termination date.  Therefore, arbitration properly commenced in this case in January 2007– obviously well beyond the sixty day mediation termination date.

### C.  Perjury of the Coffee Beanery at the Arbitration

Respondents claim that Joanne Shaw committed perjury during the arbitration. Respondents identify two instances of supposed perjury in support of this allegation: (1) Joanne Shaw's testimony that the Coffee Beanery always listed the home addresses for terminated franchisees; and (2) her testimony that the Coffee Beanery made the changes required by the Maryland Securities Commissioner and in all other states with registration requirements.  As to the first instance, respondents fail to point the Court to the relevant portion of the arbitration transcript where this alleged perjury occurred.  Thus the Court is not able to evaluate whether, in fact, Joanne Shaw's testimony was false.  In any event, even if her statements were false, respondents cannot satisfy the three part test used to evaluate whether an arbitration award should be vacated for fraud.

To merit the vacation of an arbitration award for fraud, the movant must establish "(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the

discovery of the fraud during or prior to the arbitration." *Inter'l Bhd. of Teamsters, Local 519 v. U.P.S.*, 335 F.3d 497, 503 (6th Cir. 2003)(citation omitted); *see also Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988)(formulating test). Even assuming that respondents are able to prove the first two elements, there can be no doubt that respondents were aware of or could have discovered the alleged falsity of Joanne Shaw's testimony during the arbitration. Respondents obtained or could have obtained copies of the Coffee Beanery's updated UFOCs prior to the arbitration. Because respondents therefore had the opportunity to cross-examine Joanne Shaw with regard to the alleged perjury, the Court concludes that fraud is not a basis for vacating the arbitration award. *See O.R. Sec., Inc. v. Prof'l Planning Assoc.*, 857 F.2d 742, 749 (11th Cir. 1988)(denying motion to vacate arbitration award on the grounds of fraud because the moving party had the opportunity to cross-examine on the alleged false testimony).

### D. The Arbitrator's Disregard of the Law

Respondents assert several arguments in their opposition to petitioners' motion to confirm the arbitration award under the heading: "The Arbitrator Showed Manifest Disregard of the Law." (Resp.'s Br. in Resp. to Mot. to Confirm at 18.) In this section, however, respondents fail to cite specific law that they believe the arbitrator disregarded. Instead, respondents simply identify numerous areas where they believe the arbitrator disregarded evidence that favored their version of the events leading to Welshans' execution of the franchise agreement. However, in their motion to vacate the arbitration

award, respondents identify several points of law that they claim the arbitrator disregarded.

Respondents first claim that, under Maryland Franchise Registration and Disclosure Law, they had the power to rescind the franchise agreement within three years of their receipt of the UFOC, if the Coffee Beanery failed to disclose certain information before Welshans executed the franchise agreement. (Resp.'s Br. in Supp. of Mot. to Vacate at 17.) Respondents, however, do not cite the relevant law for the Court. In any event, pursuant to the Consent Order– which was premised on the violation of Maryland franchise law– the Maryland Securities Commissioner required the Coffee Beanery and Kevin Shaw to offer respondents the opportunity to rescind the franchise agreement by sending them a letter "in substantially the form attached to [the Consent Order] as Exhibit 1 . . .." According to that letter, a franchisee had to respond within thirty (30) days in order to invoke its right to rescind. Respondents apparently failed to accept the offer within the allotted time period.

Respondents next assert that the arbitrator added a reliance element and intent element into Maryland franchise law. This is not necessarily true. The arbitrator did find that "there was no intent on the part of [The Coffee Beanery and Kevin Shaw] to mislead Claimants [WW, Ms. Williams or Mr. Welshans] or misrepresent the franchise system." (Pet.'s Mot. to Confirm Award, Ex. A at 2.) The arbitrator also concluded that "Claimants did not rely on any sales or expense information provided by [The Coffee

Beanery and Kevin Shaw].” (*Id*. at 3.) Neither of these findings, however, were made specifically with regard to respondents' claim that petitioners violated Maryland franchise law, as opposed to respondents' claims of fraud, fraudulent inducement, misrepresentation, negligent misrepresentation or detrimental reliance. Most, if not all, of these claims require a showing of intent and/or reliance.

Respondents also contend that the arbitrator disregarded the Maryland Securities Commissioner's legal conclusions– an argument the Court only needs to focus on briefly. As set forth previously, the Consent Order expressly provides that the factual findings and legal conclusions therein are not binding upon the Coffee Beanery and Kevin Shaw “in any proceeding, litigation, or arbitration against them in which the Commissioner is not a party.”

Respondents further claim that the arbitrator made a “ludicrous determination” by finding that none of the respondents had standing. (Resp.'s Br. in Supp. of Mot. to Vacate at 19.) The Court is not convinced that the arbitrator made such a finding. In any event, respondents fail to demonstrate that such a finding is an error of law, much less a “manifest disregard” of the law. *See supra*. To make this showing, respondents had to show that the relevant law is clearly defined and that the arbitrator consciously chose not to apply it. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000)(rejecting party's assertion that the arbitrator disregarded the law and noting that since 1953, when the Supreme Court established the manifest disregard of the law standard as a basis for

vacating an arbitration award, only two federal courts of appeals have used it to vacate arbitration decisions.)

### E.     The Arbitrator's Disregard of the Facts

Finally, respondents assert that the arbitrator disregarded facts establishing their claims against petitioners.  First respondents fault the arbitrator for disregarding the factual findings set forth in the Consent Order.  Those factual findings, however, were not binding on petitioners or the arbitrator in the arbitration proceeding.  *See supra*. Respondents further argue, however, that the arbitrator's alleged wholesale rejection of its witnesses and evidence demonstrate her bias in favor of petitioners.

As an initial matter, while the Sixth Circuit has adopted "manifest disregard of the law" as a ground for vacating an arbitration award, it is not evident that the court has also adopted the ground of "manifest disregard of the facts."  The Federal Arbitration Act does not grant courts the authority to review arbitrators' decision *de novo*.  As this Court emphasized in a previous case: "Arbitration does not provide a system of 'junior varsity trial courts' affording the losing party complete and rigorous *de novo* review."  *Terk Technologies Corp. v. Dockery*, 86 F. Supp. 2d 706, 708 (E.D. Mich. 2000)(quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993)). Such a standard of review is contrary to the Act's purpose: ". . . to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation."  *O.R. Sec., Inc. v. Prof'l Planning*

*Assoc., Inc.*, 857 F.2d 742, 745-46 (11th Cir. 1988)(*Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179 (11th Cir. 1981)).

Respondents do not contend that they asked for, but were denied, a delay in the arbitration hearing; nor do respondents claim that they were prevented from presenting evidence to the arbitrator. *See* 9 U.S.C. § 10(a)(3). Respondents only assert that the arbitrator failed to accept their version of the evidence and wrongly found petitioners' witnesses more credible. Absent specific facts indicating that the arbitrator had an improper motive for ruling in favor of petitioners, respondents' belief that the arbitrator should have adopted their version of the relevant events does not warrant this Court's complete review of the evidence presented in the arbitration proceedings. ". . . [I]t is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-settled that 'a federal court may not conduct a reassessment of the evidentiary record.'" *Nichols v. Brookdale Univ. Hosp. and Med. Center*, 204 Fed. App'x 40, 43 (2d Cir. 2006)(quoting *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004)).

## IV.    Conclusion

Based on the above, the Court concludes that respondents fail to state a ground for vacating the arbitration award under Section 10 of the Federal Arbitration Act. Thus, pursuant to Section 9 of the Act, this Court must confirm the award.

Accordingly,

**IT IS ORDERED**, that Respondents' Motion to Vacate Arbitration Award is

**DENIED**;

**IT IS FURTHER ORDERED**, that Petitioners' Application/Motion to Confirm

Arbitration Award is **GRANTED**;

**IT IS FURTHER ORDERED**, that the arbitrator's March 28, 2007 award is

**CONFIRMED** and may be enforced according to its terms.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Karl V. Fink, Esq.
Harry M. Rifkin, Esq.
Mark J. Kriger, Esq.